May it please the court, your honors, Barry Shultz on behalf of the appellant Daniel Keys. The administrative law judge made three main errors in her decision finding Mr. Keys not disabled. She erred in giving great weight to the opinions of the non-examining state agency doctors because after those doctors reviewed the file more than 300 pages of additional medical records were submitted into the record and those medical records include some very significant findings concerning Mr. Keys' medical conditions including a significant cervical spine surgery that the state agency doctors were unaware of. Mr. Shultz, I know you're criticizing the reliance upon those doctors. Were there other medical opinions the ALJ should have relied upon? There were no opinions concerning Mr. Keys' functional abilities by treating doctors. That's why I find this such a difficult case for the plaintiff. Well, I believe the Stage v. Colvin case is precedent for reversing under these circumstances, your honor, where because the ALJ has the duty to determine the claimant's functional capacity and if the ALJ primarily, which the ALJ did in this case, relies on medical opinions to determine what the claimant's functional capacity is, the ALJ has to take into consideration significant evidence that those medical opinions were not correct. That those doctors did not consider. Mr. Keys testified to significant limits and significant pain which caused trouble sleeping and he couldn't focus and concentrate and the ALJ had to consider all the evidence that may have supported that testimony. This court held in the Scott v. Astruz case and I believe the Hill case also that the claimant's testimony, in light of significant evidence supporting that testimony, is something an ALJ may rely on and must consider. So in this case, we have doctors, the state agency doctors who were unaware or didn't mention the claimant's rheumatoid arthritis, were unaware of or didn't mention the diagnosis of carpal tunnel syndrome, did not mention the diagnosis of anemia, were unaware of the fact that Mr. Keys had to undergo a third surgery on his cervical spine. So the question for the ALJ was, did all of that evidence support Mr. Keys' testimony as to what his limitations were? Does their preponderance of the evidence in front of the ALJ support Mr. Keys' testimony? And relying on the state agency doctors who never reviewed any of that evidence is not substantial evidence supporting the ALJ's determination as to the claimant's functional capacity. In addition, or in particular in this case, there were two MRIs, one of the cervical spine and one of the lumbar spine, that the state agency doctors did not consider. And the commissioner in their brief argued that the MRI reports themselves say that the findings were mild, but actually the findings are very specific and detailed, and the ALJ was not qualified to interpret those MRI reports without the assistance of a medical advisor. Mr. Keys was represented by counsel before the ALJ, correct? That's correct. And the medical records that you're talking about came in that roughly year between Dr. Onamusi's exam and the other doctors' reviews of the records and the ALJ's hearing, right? That's correct. So were they presented inadequately? What happened there? No, it just appears that the ALJ did not, if you review the ALJ's decision, the ALJ did not address that evidence. The ALJ just didn't overlook it in her decision. She doesn't talk about Mr. Keys' complaints of severe lumbar spine pain in light of the MRI. We ordinarily assume that a claimant represented by counsel is putting his best case forward, and ordinarily it takes something to beat nothing, right? Or at least something to beat something, if you've got medical opinions saying this fellow is not disabled. You ordinarily, I would think, need some medical opinions to the contrary. Well, that is contrary to what this Court held in stage, Your Honor, in my opinion. Because, again, you've got medical evidence that was submitted, 300 pages of it, that was primarily supportive of the claimant's testimony. And so the ALJ is, it's the ALJ's duty to assess that evidence and determine the claimant's functional capacity. It was not the state agency doctor's responsibility to do that. And while their opinions may have been reasonable at the time that they issued their decisions, or their opinions, based on the evidence in the record at the time, the ALJ could not reasonably find that those doctors' opinions were supported, given the significant amount of evidence, including the fact that those state agency doctors didn't even mention a number of diagnoses that Mr. Key suffered from. I mean, there's evidence in the file of rheumatoid arthritis, and that in, I believe it was December of 2010, he all of a sudden started having symptoms of rheumatoid arthritis, swelling, puffiness in multiple joints, including the hands. State agency doctors don't mention that evidence or that diagnosis. And the ALJ doesn't really evaluate, then, how she relied on those doctors' opinions, given the significant evidence that came into the record. The, there was mention about the chronic dislocation, which never, that was never taken into consideration. That's correct, Your Honor. In fact, the ALJ said that the shoulder problem only occurred occasionally, I think. Only a few times per year. A few times a year, but Mr. Key has actually testified that it happened two to three times a month, so that would be 24 to 36 times. It does affect moving your hands over your head. That's correct, Your Honor. In addition, the ALJ aired, and this is under the Herman case, in her analysis of Mr. Key's ability to use his hands. A key finding by Dr. Onamusi was that the doctor actually tested the claimant's grip strength, and it turned out that he had 25-pound grip strength in his dominant right hand, which is less than 25% of normal grip strength for an adult of Mr. Key's age. The ALJ doesn't recognize that finding. The ALJ mentions it, but she seems to mention it as if it's a normal finding, and that was the problem in the Herman case. It's not a normal finding. It's a very abnormal finding, and it actually fully supports Mr. Key's testimony that on two-thirds of the days on any given month, he was unable to grasp things. There's also other significant evidence supporting that finding of inability or difficulty grasping. The claimant often had swollen wrists, swollen fingers, diminished sensation in his hands, so the ALJ should have recognized this finding and addressed it in her decision. And finally, the ALJ talks about Dr. Hedrick's, I think it's April 2012, findings of significant limits using the hands. But then she says, but those findings were not present in the next two times that the claimant saw Dr. Hedrick. But in those next two doctor visits, Dr. Hedrick didn't perform that testing. So it's not a question that the findings weren't present. The doctor didn't test for that because Mr. Keys went in to see the doctor, complaining again of his severe neck pain and his severe back pain, which is primarily what Dr. Hedrick treated him for. So the absence of testing doesn't mean that the signs and positive test results were no longer present. It just means that the doctor didn't test for them at that time. There's evidence, again, later on in the file establishing that Mr. Keys, again, continued to have significant problems with his hands. And one finding by the surgeon that, in fact, he had decreased sensation in all of the dermatomes in his hand, meaning where all the nerves going into his hands, he had decreased sensation throughout. Thank you. Thank you, Mr. Schultz. Mr. Dank. Good morning, Your Honors. May it please the court, my name is Joshua Dank. I represent the Social Security Administration. As the appellant outlined, there are three primary issues here before the court today, and there are several facts supporting the Commissioner's argument really regarding all three issues. And of particular import is the fact that all medical source opinions of record support the ALJ's finding, and that the ALJ cited other evidence through treatment notes that showed improvement, that showed a lack of complaints about several of these impairments and their symptoms. Now, with respect to the medical source opinions of the state agency reviewing doctors, Drs. Brill and Sands, the appellant argues that these doctors, for example, did not consider rheumatoid arthritis, but consultative examiner Dr. Onomushi did, and Dr. Brill specifically cited Dr. Onomushi's report in his assessment. Now, that these doctors, Drs. Brill and Sands, did not list or detail each and every diagnosis or impairment that they considered does not show lack of consideration. They cited treatment notes, they cited examination reports, and they agreed with Dr. Onomushi's bottom line opinion of sedentary to light activity, that the appellant could perform sedentary to light activity. No doctor believed that the appellant's rheumatoid arthritis or right shoulder condition or some of these other impairments caused greater limitations. Now, the appellant also argues that Drs. Brill and Sands in particular did not consider this later evidence. We're talking about six months' worth after their opinions. Now, nothing requires non-examining sources to base their opinions on a complete record before the ALJ. Social Security ruling 966P contemplates that state agency doctors may not always have all the evidence before them, but that does not preclude an ALJ from giving these opinions considerable weight. And the appellant does not actually prove that this later evidence was likely to have changed these doctors' opinion or that there was a need for updated opinions. The ALJ did, in fact, consider much of this later evidence. The ALJ did not explicitly spell out consideration of every single piece of evidence, and as this court has held numerous times, the ALJ was not required to do so. And in our brief, the commissioner demonstrated how the appellant's citation to some of these later records really did not show errors. Some of these records were, in fact, cited by the ALJ, and most of them actually further support the ALJ's findings. The appellant, for example, does bring up the MRI results. Well, the fact of the matter is an appellant accuses the ALJ of interpreting these, playing doctor, essentially. But, in fact, the MRI results spell things out in terms of explaining that almost every one of these findings was either mild or minimal in terms of their impact. Like the chronic dislocation of the shoulder? From the MRI results? No, no. My question that I asked earlier and responded may be jumping away from your order of proof, but what about the chronic dislocations? Well, the ALJ did find that... It only happened a few times a year, she said. Right, right. And the medical evidence doesn't bear out that it happened as frequently as the appellant considers, that there weren't complaints. What happens when it does occur? Well, no doctor gave an opinion that it was something that would limit the appellant's ability to perform full-time work. And related, when talking about Dr. Onomushi's report, the appellant discusses the fact that Dr. Onomushi... First of all, the appellant tries to dismiss the fact that Dr. Onomushi actually gave a functional opinion. The doctor did. The doctor said, sedentary to light work. And the doctor also said, migraines make it in the way. The ALJ did deal with that on page 13 of the decision, saying that the appellant hadn't sought any treatment or complained of that in a while. But Dr. Onomushi did give an opinion. It did not include anything about gripping or grasping limitations. The doctor performed an examination with many findings. The appellant wishes to focus on the gripping and grasping, and wishes, on the contrary, to diminish Dr. Onomushi's findings with respect to fine and motor manipulation, such as doing buttons and zippers. And the appellant makes no distinction why one should matter and the other shouldn't. The bottom line is that the doctor, Dr. Onomushi, not the appellant, not the ALJ, but the doctor, knew what the doctor's findings were and made an actual opinion, a clear opinion, that the appellant could perform sedentary to light activities. Now, the appellant also argues that, with respect to the hand condition, that there were some findings in there that the ALJ did not deal with. The ALJ did deal with those, again, did not mention every detail, but dealt with many of those. And the ALJ mentioned that after some of these findings, where there were positive findings, there were subsequent exams where there weren't any such findings. The appellant argues, well, the appellant was only there for the back condition, or the appellant tries to belittle some of these visits as just medication refill visits. Well, the evidence bears out these were not just medication refill visits. The doctors at these visits performed a full review of symptoms and full examinations. The fact that the appellant did not complain of hand conditions or various other conditions, such as shoulder condition, during some of these examinations is telling. Of course there is no need to test for something that appellant does not complain about. That shows a lack of consistency in these complaints and in how these conditions bother the appellant. And that's why the ALJ's finding on that point is supported by the record. Now, in the end, the appellant is not satisfied with the existing medical source opinions, all of which undermine his claims of disabling pain and symptoms, and all of which support the ALJ's findings. The appellant is also not satisfied that treatment records and other record evidence do not fully support his claims, that they show improvement with treatment, that they show a lack of complaints on many of these issues. The record as a whole is complete, and the medical source opinions are supported by the record. The ALJ reasonably relied on all medical source opinions, every single one, and the appellant's request for the ALJ to either play doctor or to keep ordering more exams or more medical opinions until one finally supports the appellant's claims should be rejected. Thank you. Thank you, Counsel. Anything further, Mr. Schultz? You have about 30 seconds, I would guess. If you want to look at page 16 of the record, you'll see the ALJ cites and talks about Dr. Onamusi's report, many positive findings showing problems that Mr. Keyes had during the exam. The ALJ then says, in sum, this examination does not support the claimant's allegations. But that's just a summary not based on those findings by the doctor at all. Page 843 is the MRI of the lumbar spine. One of the findings was disc and facet touching the descending L4 nerve roots. So the commissioner tries to say that, well, the ALJ could easily find these minimal findings. Thank you, Counsel. Thank you, Your Honor. The case will be taken under advisement.